May it please the Court. Stan Gore brings two claims in this case under the Federal Rehabilitation Act. One is the failure to accommodate a physical limitation, and the second is a decision by the postmaster to put him on administrative leave based on a perceived disability, that being that he was mentally unstable and a threat to himself and to other persons. The procedural history of this case is relevant to how the issues get presented and what was dealt with and not dealt with on the motion for summary judgment. Early in the case, the defendant filed a motion to dispense, which was deemed as a motion to – for a judgment on the pleadings. The district court granted that motion with respect to various aspects of the complaint, but denied it on the grounds that the complaint did present an accommodation claim that could go forward. On the basis of a perceived disability. What the court excluded, well, that's the way it ultimately turned out. I don't think that's – But isn't that what the district court did, though? The district court determined what was left was a claim of a failure to accommodate on the basis of a perceived disability. Well, if the district court did that, I think the district court would – Well, I'm not asking if the district court did that. Isn't that what the district court did? I don't – I did not read the order quite that restrictively, Your Honor. But that is how it ultimately turned out, because the question that the court dealt with on the motion for summary judgment was whether there was an obligation to accommodate somebody based on a perceived disability and based on Ninth Circuit authority. The court held that there was no such obligation. Let me ask you, on that – with respect to his perceived disability, at least as the district court understood it, was that claim exhausted? Yes, that claim was exhausted, Your Honor. Could you point to me in the record where it shows that that particular claim was exhausted, failure to accommodate a perceived disability? He was put on administrative leave on November 17th of 1998, and he filed his EEO charge on December 15th of 1998. And that is in the excerpt of the record, page 349. What documentary evidence is there in the record that Mr. Gore submitted any complaints to the EEOC in 2001? And if there is a document, does it mention anything about Postmaster Jensen's visit to the Mullen Station? There is not in this record, and we are not making our claims – we're not making our claims based on new violations of the Rehabilitation Act in 2001. Now, whether there's a – additional damages that could be argued is a question of damages as opposed to whether or not there's an additional cause of action that could be asserted. That cause of action has not been asserted in this case. The cause of actions asserted in this case based on – is based on conduct or are based on conduct that occurred in 1998. Okay. What conduct? Thank you. The – there's essentially two, as I said, two basic claims here. One is the failure to accommodate and then laying him – well, putting him on administrative leave because of the perceived disability. The failure to accommodate is twofold. First of all, he applied for a maintenance position in another postal building in Missoula, Montana. That application was made in April of 1998. He made that application because he was having difficulty doing the job that he was normally required to do. Initially, the postmaster said, you're going to get the job. That's what the postmaster said in April of 1998. But on August 14th of 1998, the postmaster told him that he was not going to get the job, and the postmaster was upset with him because of some other complaints that he filed. That's the first specific failure to accommodate. Secondly, it is our position – Accommodate for what? His – his – the physical limitations that he was suffering as a result of a whole series of injuries that he suffered while working at – at the post office. Now, we contend that he suffered a large number of these injuries because of unsafe conditions, but it really doesn't make any difference under the Rehabilitation Act whether these limitations are the result of injuries due to unsafe conditions or safe conditions and he just had a bad day. Well, but then – but part of – apparently part of what they agreed to had to do with they didn't have – you know, they'd try to avoid contact with Postmaster Jensen. That was – Now, that's not – that wasn't a physical infirmity. That's correct. That was an accommodation that the post office agreed to make in 1999, which is after he was put on this administrative leave and brought back. One of the conditions was that he would not have contact with Postmaster Jensen, and, of course, he did have contact with Postmaster Jensen in 1999, and the – Well, he – all right, but I think you allege that in 2001 Postmaster Jensen visited the Mullen Station. Isn't that what you allege? He – well, he probably visited on a number of occasions. 2001 is one situation. 1999 is another situation. Well, in 2001, was there any conversation at that time? I don't know that there was any – Is there any evidence in the record that they had any conversation? I do not believe that there is evidence in the record that they had conversation in 2001. But our case, our case is that he was placed on administrative leave in November of 1998 because of a perceived disability and that there are financial consequences that have been visited upon this gentleman as a result of that. What was the perceived disability in 1999? That he was mentally unstable, that he was depressed, that he was a threat to himself and a threat to others. They were specifically concerned that he would be physically violent on postal grounds towards other postal employees. And, of course, this is back, you know, several years ago when there was the tragic history that the Postal Service had of, you know, unfortunate events occurring at various post offices. So let me ask you this. Under Ninth Circuit law, if the claim here is that they failed, that the post office failed to accommodate a perceived disability, under Ninth Circuit law, does he have a claim, a failure to accommodate? No. Under Ninth Circuit law, there is no claim for a failure to accommodate a perceived disability. But under Ninth Circuit law and every other circuit, if somebody is improperly placed on administrative leave and visited with adverse financial consequences and an adverse job action because he is perceived to be disabled, then he does have a claim. We were not allowed to argue that on the motion for summary judgment as a result of the Court's decision granting a judgment on the pleadings with respect to everything other than an accommodation claim. I see that I'm down to two minutes. I'd like to reserve the balance of my time. That's fine. Thank you. May I begin? Yes. Your Honor, I'm David Carrow. I'm here for the Postmaster General. Just keep your voice up, please. Yes, sir. I'm David Carrow. I'm here for the Postmaster General. And what I'd like to do this morning is simply go through the winnowing and sifting that was done below that led the district court to think that the only claim before us for it when it granted the motion for summary judgment was a smirk claim. It didn't arrive at that decision by accident. Well, I guess just from your perspective, because when I was listening to the talent, I was having a little bit of a difficult time ascertaining not that I'm really having a difficult time in this, but what the nature is of what we're reviewing in terms of I think that, you know, Mr. Gore, I mean, his argument is that the district court erred in holding he failed to exhaust his administrative remedies in ruling that as a matter of law he was not entitled to reasonable accommodations based on the regarded as disabled under Section 501. And that's what he's arguing in his briefs, I think. Your Honor, one of my problems is I'm not sure what he was arguing, what he was arguing. I was kind of surprised, for instance, this morning to find that the I gather the exhaustion arguments that were part of his brief are out. And I hadn't really focused on the claim that he was I guess a disparate treatment claim that he was sent home. I hadn't realized the fact that he was put on leave until this morning was an issue. And it was listing the issues that we have are going to be the issues that are raised in the brief. I mean, that's what we're going to address. Well, only if they were issues that were before the district court. And that's why I thought we went through a lot of winnowing and sifting below. And the district court thought it was dealing with a very different issue. And frankly, I did. As the debate went on, as the argument went on, I looked in the brief and saw, oh, yeah, the motion to the decision to send him home is raised in the brief. But I hadn't spotted it because I thought we were dealing with an accommodation claim. And I'm going to tell you I think I was entitled to that. Well, as I understood his argument, he just put a little different spin on the accommodation argument. As I understand it, he's not really arguing a failure to accommodate. It's more like a retaliation claim. It is. But that's not what we were dealing with below, and it's not what I thought I was dealing with. My brief is simply not very responsive to his. And I don't think I'm ‑‑ I think we've been on the scavenger hunt, and I missed the part. I didn't find the prize. The complaint came in, the complaint that was filed was fairly simple. Actually, since we're no longer talking about the reprisals, I can dispense with the complaint. The amended complaint that came in seemed to argue that we had disabled Mr. Gore through unsafe working conditions, had harassed him for complaining about unsafe working conditions. It's a retaliation claim. Yeah. But there out, I gather, especially from the argument today, had failed to accommodate him. Now, it didn't say whether it failed to accommodate him because of a disability or a perceived disability. And under the act, I think he probably didn't have to make that distinction, although that's close. But he didn't. We then went through and we deposed him. And the deposition was clear. What he was ‑‑ the only thing he had been accommodated about with regard to, and remember, we're chasing down an accommodation claim, the only failure to accommodate him was what I've called the sparking claim, his postmaster's refusal to stay away from him. We then moved for summary judgment. This is the way a defendant finds out what it is he's got to defend against. And we made several arguments. One is that he didn't timely contact the counselor. He never responds to that. The district judge didn't ‑‑ could have but didn't grant summary judgment on the reason he didn't, on the failure to respond. But that's within this court's ambit of ‑‑ under de novo review. Frankly, we thought he lost his case when he didn't respond to that. Then we said ‑‑ but the district court went on. We said he hasn't raised his spark claim before the ‑‑ in the administrative process. And in response to that, he asked the court to conduct a scavenger hunt. He dumped in pages of documents, and I'm pretty sure that the claim that we sent him home is in there. But so are a lot of other claims, including, I think, right at the beginning of the documents, a religious discrimination claim. Well, the court could have ‑‑ the court could have dismissed there, I think, under its own rules. It's certainly under Rule 56. But it conducted the scavenger hunt and came up with the spark claim. And it came up with the spark claim because that's the one Mr. Gore identified in his deposition. And we set out the colloquy in our brief on that. And the spark claim hadn't been exhausted. The district court, and certainly this court, could hold that that justifies summary judgment. Then the court went on, thinking it was dealing with a perceived ‑‑ a failure to accommodate a perceived discrimination claim, discussed the law on that point. And that certainly this court can affirm on. Then it went on to say, well, maybe he's saying he really ‑‑ his real disability wasn't accommodated. And it discussed that. It found no evidence that we hadn't accommodated any disability he might have had, found no evidence he was disabled. And that was a basis for affirmation. I think there was the one incident where Jensen, he came in contact with Jensen, I guess. Yes. And the courts, what did the courts say about that? That was his smirk claim. Right. And the court ‑‑ Assuming that, let's assume it's true that he did that. But he didn't keep him away, I guess, because he had the ‑‑ The court rested its decision there on the, I believe, on the two holdings that we didn't have to accommodate a perceived disability and there was no evidence that he was disabled. I would say that that's not a reasonable accommodation either, that a ‑‑ to say that the postmaster has to stay away from his employees. And when you read the evidence of the contact, that certainly is not within the ambit of the Rehabilitation Act. The postmaster passed them. Now, today I've learned that the real claim is not a failure to accommodate, but a disparate treatment claim. He was sent home because we perceived him to be ‑‑ He was sent home because we perceived him to be disabled and the proof of that is we sent him for a fitness for duty examination. And, you know, I must speak when I said I totally missed it because I remember something in my brief about this now. This would be, if it were before the court, an extremely significant claim because it suggests that the minute an employer has questions about someone's health, serious questions, and sends them for a disability for a fitness for duty examination, he automatically brings the employee under the Rehabilitation Act, which should put a crimp on, you know, we would have to advise our clients trying to find out if someone needs help is a very serious step. But I just don't think that was in there. And if it was, I don't see how asking a doctor if a fellow has a serious disability is evidence that we perceived him as being disabled, particularly when we employed him for years after the no answer came back. He didn't ‑‑  No, I don't think it was an adverse employment action. Did he lose any? Not if he was on administrative leave. He lost no pay. Now, I'm going outside the record. That's just my knowledge of postal service procedures. The record says he was on administrative. And if that's so, my knowledge of postal service procedures allows me to say with 99 percent confidence he lost no pay. That's objecting to any possible disciplinary measures? Not for administrative leave. An arbitrator would reverse us in a minute if we ‑‑ that is, we put him on administrative leave not because of a crime but because we wanted him to take a fitness for duty examination. Basically, I'm now dealing with an argument, and I think I read the record pretty carefully that I didn't think was in the case, that I didn't think was in the case, although I found it in the briefs now that my nose has been pushed into it. And I know the court didn't think was there. The court, we went through the winnowing and sifting process. He basically has told us, and he's still telling you, to go figure out what the claim is, and apparently we missed the real claim. Time's up, Your Honor. Thank you. Let's see, Mr. Murphy, you have some rebuttal time? Thank you, Your Honor. Just a few points. Again, I want to emphasize that we are not contending that we have a claim based on a failure to accommodate with respect to the perceived disability. The Ninth Circuit law is clear on that. We are contending that he has, in fact, suffered financial damages as a result of being put on administrative leave. That has to do with the loss of overtime. That's a disparate treatment. Pardon me? A disparate treatment claim. They put him on administrative leave because he was, in fact, disabled. Yes. But what was before the district court? You can't, like, bring things up for the first time in front of this court. Your Honor, this perceived disability claim has been in this case from the very beginning. It's paragraphs 6 and 7 of the original complaint. And we've argued that all the way through. We've also argued the accommodation. I mean, I'm not making this up just because I'm here before this court. It's been in there since day one. Let me correct myself then. The claim is that they put him on administrative leave because they perceived that he was disabled. Yes. Not because, in fact, he was disabled. That's correct. Okay. Okay. And that claim is fully exhausted. That claim is fully exhausted based on what I cited to the court earlier in my argument. That December 15th complaint is the EEO charge on that claim. And did that ‑‑ was that claim fully addressed by the district court? No, it was not fully addressed by the district court. Was it raised to the ‑‑ let me step back then. Was it raised to the district court? The district court, when we got to the motion for summary judgment, the district court was dealing with only an accommodation claim. Now, we did argue, at least I attempted to argue, that there should be some kind of an exception to the rule that an accommodation is not possible in the case of a perceived disability. That was discussed. But we did not argue on the motion for summary judgment that there was a, you know, a direct claim that we were trying to assert based on him being laid off because we ‑‑ I view that as being knocked out on the motion for judgment on the pleadings. But so I ‑‑ so you thought that that claim had been eliminated by the district court's earlier ruling? Yes. What do we do about the deposition testimony in which he said that what his claim was? That is definitely a problem, Your Honor. I will concede that to you. And that certainly would affect his credibility in the eyes of a jury. But there is evidence in this record, and I've cited it in my brief, and that evidence is in the postal service's records as well, that there was a failure to accommodate back in 1998 by not giving him the maintenance job and not providing him with more feasible working conditions. And he didn't seem to feel that, though. He was not certainly not as I had hoped he would be in the deposition. Okay. Thank you. Thank you, Mr. Murphy. Appreciate it. Appreciate your arguments. The matter will be submitted at this time. Thank you.
judges: Hug, Paez, Callahan